IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, SOUTHERN REGION

| | |
|---|---|
| STEPHEN MABEY and TATYANA MABEY,<br><br>Plaintiffs,<br><br>v.<br><br>SUPERINTENDENT SAM RAY and NORTH SANPETE SCHOOL DISTRICT,<br><br>Defendants. | **REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 4:18-cv-00061-DN-DBP<br><br>Judge David Nuffer<br>Magistrate Judge Dustin B. Pead |

## **INTRODUCTION**

The District Court referred this matter on September 20, 2018 pursuant to 28 U.S.C. § 636(b)(1)(A). (ECF No. 5.) Before the Court is Defendants' Motion to Dismiss (ECF No. 9) as well as Plaintiffs' Motion to Sever and Remand. (ECF No. 10.) The Court heard oral argument on the Motion to Dismiss on January 28, 2019. (ECF No. 23.) Stephen Mabey appeared pro se on behalf of Plaintiffs Stephen and Tatyana Mabey, and Michael J. Teter, Assistant Utah Attorney General, appeared on behalf of Defendants Superintendent Sam Ray and North Sanpete School District ("Defendants").

The Court, having carefully considered the parties' memoranda and arguments, and for the reasons set forth below, **DENIES** Plaintiffs' Motion to Sever and Remand. The Court further **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss in part, but **DENY** the motion as to Plaintiffs' equal protection claim against North Sanpete School District.

## BACKGROUND

Utah law requires a school district to provide free public transportation to any elementary school student who lives at least one-and-a-half miles from the school. Utah Code § 53F-2-403(1)(a). State law also provides that, "[a] student is responsible for the student's own transportation to bus stops up to one and one-half miles from home." Utah Admin. Code R277-600-6(6)(a). State regulations further require that, "a bus route shall: (a) traverse the most direct public route; (b) be reasonably cost-effective in comparison to other feasible alternatives; (c) provide adequate safety for students; (d) traverse roads that are constructed and maintained in a manner that does not cause property damage; and (e) include an economically appropriate number of students." Utah Admin. Code R277-600-6(3).

Plaintiffs qualify for bus transportation for their child to attend Spring City Elementary. The North Sanpete School District established a bus stop six-tenths of a mile from Plaintiffs' home. Based on concerns about having their child walk alone to the bus stop, Plaintiffs presented to the North Sanpete School District Board at a public meeting and requested that the School District instead establish the bus stop at Plaintiffs' home. As an accommodation during Mrs. Mabey's pregnancy, the School Board did that for the 2017-2018 school year. In the fall of 2018, Plaintiffs again appeared before the School Board and requested a permanent change to the bus route so that the stop for their son would be in front of their house. By a vote of 3-2, the Board denied the request.

Plaintiffs have withheld their child from school and filed this action under 42 U.S.C. § 1983 against Superintendent Ray and the North Sanpete School District, alleging that Defendants violated Plaintiffs' rights under the Fourteenth Amendment's due process and equal protection

2

clauses. Plaintiffs also asserted claims that Defendants violated Utah Code § 53F-2-403(1)(a) and Utah Admin. Code R277-600-6(3), as well as breached the implied covenant of good faith and fair dealing.

## STANDARD OF REVIEW

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In reviewing a 12(b)(6) motion to dismiss, the court assumes the truth of well-pleaded facts and draws reasonable inference in a light most favorable to the plaintiff. *See, e.g.*, *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011). But a claim survives if "there is plausibility in the complaint." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Threadbare recitals of elements, facts "merely consistent" with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient. *Iqbal*, 556 U.S. at 678; *Leverington*, 643 F.3d at 723 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Gee v. Pacheco*, 627 F.3d 1178, 1184–85 (10th Cir. 2010) (citations and quotations omitted); *Hall*, 584 F.3d at 863 (citations and quotations omitted).

In reviewing a motion to dismiss, the court may rely on the facts as alleged in the complaint, but may also rely on all documents adopted by reference in the complaint, documents attached to the complaint, or facts that may be judicially noticed. *See* Fed. R. Civ. P. 10(c);

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

## ANALYSIS

### 1. Motion to Sever and Remand

Plaintiffs filed their Complaint in the Sixth Judicial District of Utah. (ECF No. 4-1.) The Complaint states five causes of action. On the face, each cause of action states a claim under 42 U.S.C. § 1983, though later pleadings suggest that Plaintiffs only intended two of the claims to arise under the U.S. Constitution. Defendants properly removed the action pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1443.

Plaintiffs rely on 28 U.S.C. § 1441(c)(2) in asking the Court to sever and remand the state law claims. However, the language of § 1441(c)(2) applies only to claims that are not "within the original *or supplemental* jurisdiction of the district court or a claim that has been made nonremovable by statute…" 28 U.S.C. § 1441(c)(1)(B) (emphasis added). This Court has original jurisdiction over Plaintiffs' claims brought under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331. Further, the state law claims in Plaintiffs' Complaint all fall within this Court's supplemental jurisdiction because they are claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

A court can decline to exercise supplemental jurisdiction over a claim based on one of four reasons:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially dominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4)

4

>in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Plaintiffs' state law claims do no implicate any of these bases for declining to exercise supplemental jurisdiction. Their state law claims do not present novel or complex issues, nor at the time of filing their Motion had the Court dismissed the federal question claims over which it has original jurisdiction. Plaintiffs have not provided any compelling reasons that might qualify as exceptional circumstances. While they argue for urgent court intervention so that their son can return to school, they do not need court action for their son to attend school since they are voluntarily keeping him home. Moreover, the fact that they are requesting such an order from this Court undermines any suggestion that remand is necessary so a state court can address that allegedly compelling need.

The only remaining basis for declining to exercise supplemental jurisdiction rests on whether the state law claims substantially dominate over the federal law claims. To determine this, courts focus on whether there exists "a substantial quantity of evidence needed to support the state claims that is not relevant to the federal claims"; whether the state claims predominate substantially with regards to the "comprehensiveness of the remedy sought"; and "whether the scope of the issues raised in the state claims shows that those issues predominate over the issues relevant to the federal claims." *The Arc of The Pikes Peak Region v. Nat'l Mentor Holdings, Inc.*, No. 10-CV-01144-REB-BNB, 2011 WL 1047222, at *3 (D. Colo. Mar. 18, 2011) (citing *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 789 (3rd Cir.1995). "The substantially predominate standard of § 1367(c)(2) is not satisfied simply because the number of state claims is more than the number of federal claims." *Id.*

There is no meaningful difference between the amount of evidence required to present Plaintiffs' state law and federal law claims, nor between the scope of the state and federal claims. Indeed most, if not all, of the evidence will overlap and the scope appears equal, if not more weighted toward the federal claims. Similarly, Plaintiffs seek only injunctive relief on the state law claims, but seek injunctive relief and damages for their federal claims. The state law claims, therefore, do not predominate regarding the comprehensiveness of the remedies sought.

Furthermore, severing and remanding the state law claims frustrates judicial economy, expends resources unnecessarily, and risks conflicting outcomes. The state and federal claims are largely identical and require the same evidence. In addition, Plaintiffs have requested identical injunctions based on both their state and federal claims. (Docket No. 11, ¶ 2.) Severing and remanding the state law claims would require the parties to litigate nearly identical matters, based on the same operative facts and involving the same case or controversy, in two separate forums. It would require this Court and the Sixth Judicial District to expend unnecessary judicial resources on a matter that is being litigated simultaneously in another court. And, finally, severing and remanding the state law claims creates the potential for incompatible judgments from the two courts.

Plaintiffs' allegations regarding Causes of Action 1, 2, and 4 (state law claims) are integrally related to their allegations in Causes of Action 3 and 5 (federal law claims). There exists no basis for this Court to decline to exercise supplemental jurisdiction over the state law claims.

2. **Due Process Claim**

Plaintiffs contend that Defendants violated their Fourteenth Amendment due process rights by not affording them a fair hearing.

The Fourteenth Amendment's due process rights do not attach unless the government is depriving an individual of life, liberty, or property. *See, e.g.*, *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). Plaintiffs contend that they have a property interest in a fair bus stop or in reimbursement from the School District for not providing a bus stop. A property interest under the Fourteenth Amendment's Due Process Clause arises only when an individual has a "legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The interest derives not from the Due Process Clause, but instead must be found through independent sources, like existing statutes. *See, e.g.*, *Martin Marietta Materials, Inc. v. Kansas Dept. of Transp.*, 810 F.3d 1161, 1172-73 (10th Cir. 2016) (citing *Roth*, 408 U.S. at 577).

The state law in question here does not create a legitimate claim of entitlement to a bus stop outside Plaintiffs' home. The reimbursement regulation that Plaintiffs further rely on is not applicable when Defendants have established a bus stop within one-and-a-half miles of Plaintiffs' home.  Further, the hearings that Plaintiffs refer to were the public School Board meetings at which Mr. Mabey spoke and presented his request for a change to the established bus route.

Therefore, even accepting the allegations as true, Defendants cannot be said to have violated Plaintiffs' due process rights when: (1) there was no deprivation of a life, liberty, or property interest; (2) the meeting was not a hearing to which any procedural rights attached; and (3) Mr. Mabey presented to the school board himself.

**3. Equal Protection Claim**

The Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. am XIV. Plaintiffs contend that by denying their child door-to-door bus transportation, Defendants have denied them equal protection of the laws. Plaintiffs' arguments are premised on the contention that other, similarly situated families receive door-to-door transportation.

A court's Equal Protection Clause review begins by determining whether the law or policy discriminates against a protected class on its face or, alternatively, in its purpose and effect. *See, e.g.*, *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). A court will subject a law that does so discriminate to heightened scrutiny. *Id.* All other Equal Protection Clause challenges to a state or local action receive rational basis review, under which plaintiff bears the burden of proving that the action is not rationally related to any legitimate government purpose. *Id.*; *United States v. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 178-79 (1980).

Plaintiffs do not allege, nor could they, that Defendants are discriminating against them based on any suspect classification. The court must therefore review Defendants' decisions under rational basis, which requires Plaintiffs to prove that the School District's existing bus route is irrational or unrelated to a legitimate government purpose. The facts as alleged by Plaintiffs do not allow them to make their case.

State law supports Defendants' decision. State regulations provide that the student is responsible for transportation to the established bus stop, that can be up to one-and-a-half miles from the student's residence. Utah Admin. Code R277-600(6)(a). State regulations provide that a bus route "*shall*…traverse the most direct public route … be reasonably cost-effective in comparison to other feasible alternatives … provide adequate safety for students … traverse

8

roads that are constructed and maintained in a manner that does not cause property damage; and … include an economically appropriate number of students." Utah Admin. Code R277-600-6(6)(a). Plaintiffs do not allege that Defendants failed to consider these factors when they established the bus route.

Plaintiffs disagree with Defendants' ultimate decision and believe that the School District failed to give appropriate consideration to the factor relating to student safety. But that is not a sufficient basis for challenging the School District's decision under the equal protection clause. Instead, Plaintiffs appear to take exception with the regulation itself, which they believe should make student safety the paramount concern when setting bus routes. That is a challenge to state policy, however, not to Defendants' actions in following the policy. It is rational and legitimate for local officials to comply with regulations that govern the very provisions of state law that Plaintiffs are invoking.

To support their contention that they are being treated differently than other identically situated individuals, Plaintiffs' Complaint focused attention on Crawford Road, which they alleged was identical to their own road, but that Defendants provide bus service on. Crawford Road, however, is not identical to Plaintiffs' road, as they acknowledged at the hearing, because Crawford Road forms a loop with the main road. The Complaint does refer to "other" identical roads, although not naming them specifically or providing any facts that would allow the Court or Defendants to ascertain which roads Plaintiffs mean.[1]

---

[1] At the January 28, 2019 hearing, the Court, Mr. Mabey, and counsel for Defendants scoured the Complaint unsuccessfully looking for any reference to a specific example besides Crawford Road.

As currently drafted, Plaintiffs' Complaint fails to adequately state an equal protection claim against Defendants. However, because Plaintiffs are acting pro se and spoke at the hearing of other identically situated roads, the Court recommends that Plaintiffs be given an opportunity to amend their Complaint with regards to this one issue.

### 4. Qualified Immunity for Superintendent Ray

In their Complaint, Plaintiffs indicated that they were suing Defendant Ray only in his official capacity, but "reserve[d] the right" to sue him in his individual capacity, too. (ECF No. 4-1). For that reason, Defendant Ray raised the issue of qualified immunity.

Qualified immunity protects government officials from § 1983 damages if "their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The purpose of qualified immunity is to protect the official not only from damages, but from the lawsuit itself. For that reason, a court should address a claim of qualified immunity as early in the proceedings as possible. *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2008).

Furthermore, an official asserting qualified immunity creates a rebuttable presumption that they are immune from the plaintiff's § 1983 claims. *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001). An official may only be denied qualified immunity if, "on an objective basis, it is obvious that no reasonably competent [official] would have concluded that the actions were constitutional." *Gomes*, 451 F.3d at 1134.

The qualified immunity analysis comprises two distinct elements: (1) whether, under the plaintiff's alleged facts, the defendant violated a constitutional right; and (2) whether the right at

issue was "clearly established" at the time of the defendant's alleged conduct. *Pearson*, 555 at 231. Unless the plaintiff meets the "heavy burden" of establishing both elements, the court must recognize the defendant's qualified immunity. *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

Superintendent Ray is entitled to qualified immunity on all claims raised by Plaintiffs in this matter. Plaintiffs have failed to prove that Superintendent Ray violated any of their clearly established constitutional or statutory rights. For that reason, the Court recommends that Superintendent Ray, in his individual capacity, be dismissed from this action. The Court's recommendation that Plaintiffs be permitted to amend their Complaint with regard to the equal protection clause does not include permission to reassert any claims against Superintendent Ray in his individual capacity.

### 4. State Law Claims

Plaintiffs allege that Defendants violated Utah Code § 53F-2-403(1)(a) and Utah Admin. Code R277-600-6(3), as well as breached the implied covenant of good faith and fair dealing.

Defendants have complied with state law by establishing a bus stop within six-tenths of a mile from Plaintiffs' home. Further, the implied covenant of good faith and fair dealing exists in contract law. *See Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶¶ 8-10, 266 P.3d 814. Plaintiffs have not alleged that they entered into a contract with Defendants. As such, their allegations cannot support a breach of covenant of good faith and fair dealing.

### ORDER AND RECOMMENDATION

For the reasons discussed above, this Court **ORDERS** that Plaintiffs' Motion to Sever and Remand is **DENIED**. (ECF No. 10.) This Court **RECOMMENDS** the District Court

**GRANT** Defendants' Motion to Dismiss in part and **DENY** the Motion to Dismiss in part. (ECF No. 9). Specifically, the Court **RECOMMENDS** dismissal of all Plaintiffs' causes of action except for their equal protection claim. Consistent therewith, Plaintiffs shall have until **February 18, 2019**, to amend their complaint with regard to the equal protection claim against North Sanpete School District only.

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections. *See* Fed. R. Civ. P. 72(b)(2). Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 4th day of February, 2019.

By the Court:

_____
Dustin B. Pead
United States Magistrate Judge